PER CURIAM.
This disciplinary proceeding by the Florida Bar against James N. Davis, a member of The Florida Bar, is presently before us on complaint of The Florida Bar and report of referee. Pursuant to article XI, Rule 11.06(9)(b) of the Integration Rule of The Florida Bar, the referee’s report and record were duly filed with this Court. No petition for review pursuant to article XI, Rule 11.09(1) of the Integration Rule of The Florida Bar has been filed.
Having considered the pleadings and evidence, the referee found as follows:

As to Count I:

1. Respondent represented the estate of Harold T. Butts in Volusia County Circuit Court Case 79-71402. Mr. John F. Bolt represented three opposing beneficiaries. In February, 1983, a settlement agreement was entered into between the personal representative of the estate and the three beneficiaries.
2. On February 15, 1983, respondent delivered his trust account check to Mr. Bolt in the amount of $30,179.59 as part of the settlement and requested he hold it for approximately two weeks. When Mr. Bolt presented the check for payment shortly after receiving it, the check bounced due to insufficient funds. When informed by Mr. Bolt, the respondent first indicated the check he had received from the personal representative had bounced creating a deficit in his trust account. Mr. Bolt later discovered the check from the personal representative had been cashed without delay when deposited on February 14, 1983. When he confronted the respondent, the latter admitted the problem but claimed the problem was caused by changing bank accounts.
3. Respondent satisfied the check in early March, 1983, through a loan from Dr. Jacques Caldwell. In fact, respondent had used the trust funds from the Butts estate to cover other pressing trust obligations of almost thirty thousand dollars which he had previously and improperly spent for his own personal obligations in January, 1983. The records show he deposited $29,885.05 on January 6, 1983 to account 98644, and paid out that amount on February 22, 1983. Immediately prior to the Butts deposit, the account balance was less than $1,700.00 due to a series of checks without corresponding deposits. ...

As to Count II:

4. Respondent maintained two trust accounts with the Atlantic Bank in Day-tona Beach, Florida. A review of respondent’s trust account records for the years 1982 and 1983 reveal that they were incomplete, improperly maintained and did not include the minimally required quarterly reconciliations. Many deposit slips and checks did not reflect the identity of the client. In those years, several trust account checks were returned due to insufficient funds. Finally, the only reconciliations respondent provided were for an account for the months of January through April, 1983.
5. The records also indicate at least thirteen checks were improperly issued by the respondent to pay child support and alimony to his exwife. These payments of approximately $700.00 each caused severe shortages in respondent’s trust account requiring him to obtain personal loans or use other unrelated trust funds in order to satisfy his pressing trust obligations.

As to Count III:

6. Respondent represented Mr. Tena Kebede, a native of Ethiopia, in several *1167 and mainly real estate matters. Mr. Ke-bede speaks little English. Due to his representation respondent was aware that Mr. Kebede would receive some $50,000.00 as part of a real estate transaction at the end of April or beginning of May, 1983.
7. On or about May 4, 1983, Mr. Ke-bede had a meeting at respondent’s law office to discuss a real estate matter. At the end of this meeting, respondent asked Mr. Kebede if he could borrow $40,000.00 for a real estate deal which would make him several times that amount within the next month. Prior to entering into the loan agreement, respondent did not advise Mr. Kebede that their interests could differ, to seek independent counsel on the loan before agreeing to it, that an attorney was under a fiduciary obligation when entering into a business transaction with a client or the various security and collateral he might desire incorporated into the loan terms.
8. Mr. Kebede agreed to loan respondent $40,000.00 and refused respondent’s offer of 25% interest, preferring the lower bank rate. Thereafter, Mr. Kebede then paid the respondent $40,000.00 who gave him back a check dated June 4, 1983, in the amount of $40,533.33. On the check was the notation “repayment of loan.” When Mr. Kebede subsequently presented the check for payment, it was not honored due to insufficient funds.
9. Mr. Kebede unsuccessfully attempted to contact the respondent on numerous occasions to discuss the repayment of the loan. He finally hired another attorney to prosecute his claim for that repayment. Suit was filed against respondent and a default judgment entered. None of the loan has been repaid.

As to Count IV:

10. In 1982, respondent was retained by J.H. Muuse in connection with a bailment case with respect to a boat. He paid the respondent $2,700.00 as requested for total fees and costs. Suit was subsequently filed in circuit court in Vo-lusia County.
11. It appears that respondent initially filed suit against the wrong parties. He also failed to plead damages for loss of use. The Marina filed a claim in county court against Mr. Muuse for storage fees and received a judgment against Mr. Muuse due to respondent’s failure to appear or file any pleadings in his client’s behalf. When Mr. Muuse referred that claim to him as part of the overall case, respondent advised him he would take care of it.
12. Mr. Muuse made several trips from the Tampa area to Daytona Beach to speak with the respondent. However, he was successful only once. Respondent never contacted his client by telephone and only a few pieces of correspondence passed between them. The last record action taken by the respondent on behalf of Mr. Muuse in the circuit court case was in September, 1983. Thereafter, the respondent moved to Nevada without notifying his client or filing a motion to withdraw or otherwise protect the client. Mr. Muuse has retained other counsel. However, as a result of respondent’s failure to allege loss of use of the boat, the judge has ruled cannot be part of the disposition of the case.

As to Count V:

13. Respondent was retained by Dr. Jacques Caldwell around 1978 to represent him in the sale and purchase of various assets. This representation continued through the spring of 1983. In 1982, respondent and Dr. Caldwell entered into a joint venture to purchase a condominium. Their intention was to resell it for a profit and the condominium was sold in January, 1983. Dr. Caldwell's share of the proceeds from the sale was about $15,560.00, which respondent retained. Respondent represented the doctor and himself in both the purchase and the sale.
14. In 1982, the respondent also represented Dr. Caldwell in the sale of the latter’s aircraft depositing the net proceeds of approximately $7,412.00 into his trust account. He handled a similar air *1168 craft sale for the doctor wherein he purchased a different aircraft from the doctor who agreed to lease it for a certain amount of time each month. $5,500.00 was to go to the doctor as part of the purchase. The respondent made no down payment and the doctor did not make monthly payments. Some time later, the $5,500.00 was exchanged in a wash of the transaction. Finally, the respondent collected $5,411.70 as part of payments due to the doctor by virtue of a certain judgment. These moneys he retained and did not pay over to the doctor. Moreover, it appears that Dr. Caldwell never instructed respondent to do anything in particular with these moneys and no formal accounting was ever supplied.
15. In March, 1983, the respondent told Dr. Caldwell he was having financial problems and asked to borrow some money to cover certain deficiencies. Dr. Caldwell obtained a loan of $30,000.00 for respondent from a local lending institution. Respondent stated he was expecting a large amount of money in the next sixty to ninety days and that the loan was to be short term. Respondent also solicited an additional $30,000.00 loan directly from Dr. Caldwell. The money was loaned on the conveyance and/or execution of liens on substantially all of respondent’s material assets. Those assets included several automobiles, motorcycles, interest in an aircraft and two parcels of real estate. Respondent retained possession of some of the assets. He assured Dr. Caldwell that their value greatly exceeded the amount owed and he would faithfully honor his obligations to repay the moneys loaned.
16. In securing the loans, respondent failed to advise his client their interests could differ, that he should seek independent counsel before entering into the loans or that an attorney was under a fiduciary responsibility when entering into a business transaction with a client.
17. Respondent later was evasive when he met with Dr. Caldwell to discuss his indebtedness. In the fall of 1983, respondent terminated his law practice and moved to Nevada. He took with him some of the collateral securing the loans made by Dr. Caldwell who retained an airplane, the properties and some vehicles. None of the collateral is sufficient in value to secure respondent’s indebtedness. In fact, when Dr. Caldwell recovered the airplane he had earlier sold to respondent, he had to pay a local lending institution some $28,000.00 which respondent had refinanced with them in order to get a clear title.
The referee recommends that respondent be found guilty and specifically he bé found guilty of violating article XI, Rules 11.02(3)(a) and (4) of the Integration Rule of The Florida Bar and Disciplinary Rules 1-102(A)(3), (4) and (6), 9-102(B)(3) and (4) of the Code of Professional Responsibility as to Count I; be found guilty and specifically he be found guilty of violating article XI, Rules 11.02(3)(a), (4) and (4)(c) of the Integration Rule of The Florida Bar and Disciplinary Rules 1-102(A)(4) and (6), and 9-102(B)(3) of the Code of Professional Responsibility as to Count II; be found guilty and specifically he be found guilty of violating article XI, Rules 11.02(3)(a) of the Integration Rule of The Florida Bar and Disciplinary Rules 1-102(A)(4) and (6), 5-101(A), 5-104(A) and 5-105(B) of the Code of Professional Responsibility as to Count III; be found guilty and specifically that he be found guilty of violating Disciplinary Rules 2-110(A)(l), (2) and (3), 6-101(A)(3), 7-101(A)(l), (2) and (3), and 9-102(B)(4) of the Code of Professional Responsibility and be found not guilty of violating Disciplinary Rule 9-102(B)(3) of the Code of Professional Responsibility and article XI, Rules 11.02(3)(a) and (4) of the Integration Rule of The Florida Bar as to Count IV; and be found guilty and specifically he be found guilty of violating article XI, Rules 11.02(3)(a) and (4) of the Integration Rule of The Florida Bar and Disciplinary Rules 1-102(A)(4) and (6), 5-101(A), 5-104(A), 5-105(A), 9-102(B)(3) and (4) of the Code of Professional Responsibility. The referee further recommends that respondent be *1169 disbarred from the practice of law in the State of Florida for five (5) years.
Having carefully reviewed the record, we approve the findings and recommendations of the referee.
Accordingly, respondent, James N. Davis, is hereby disbarred from the practice of law in the State of Florida, without leave to reapply for five (5) years, effective September 16, 1985, thereby giving respondent thirty (30) days in which to close out his practice.
Judgment for costs in the amount of $768.92 is hereby entered against respondent, for which sum let execution issue.
It is so ordered.
ADKINS, Acting C.J., and OVERTON, ALDERMAN, EHRLICH and SHAW, JJ„ concur.