**Ramon GOMEZ, Plaintiff,**

v.

**HAWKINS CONCRETE CONSTRUC-TION CO., C.D. Hawkins, and O'Gwen L. King, Defendants.**

**No. PCA 84–4132 WEA.**

United States District Court, N.D. Florida.

Sept. 11, 1985.

Robert M. Ervin and Robert King High, Jr., Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, Fla., for plaintiff.

Malcolm D. Young, Jr. and R. Hal Meeks, Jr., Atlanta, Ga., for Hawkins.

Robert P. Gaines, of Beggs & Lane, Pensacola, Fla., for O'Gwen L. King.

## MEMORANDUM DECISION

ARNOW, Senior District Judge.

In this suit plaintiff sued Hawkins Concrete Construction Company,[1] C.D. Hawkins, and O'Gwen L. King. His claim against Hawkins Concrete Construction Company was disposed of by summary judgment in his favor. His claims against Hawkins and King remained for trial before the court without a jury, and that trial has been held.

King is a lawyer. Gomez sues him for breach of fiduciary duty and for negligence. Hawkins is sued for fraud in the inducement.

The court has jurisdiction pursuant to 28 U.S.C. § 1332.

Gomez is a citizen of Venezuela. He came into the United States with money that he wanted to invest. He was attracted to this area through a resident of it with whom he became acquainted in Venezuela and he liked the area.

Along the way he became acquainted with Hawkins and with King. He employed King to prepare a power of attorney for him. In 1982 he employed King to represent him in litigation with his ex-wife. That representation was in existence at all times material to the complaint of Gomez against King.

Hawkins was an officer and one of the owners of Hawkins Concrete Construction Company. His company had obtained a berthing pier construction job in Norfolk, Virginia from the U.S. Navy.

The company was thinly capitalized. It had difficulty in obtaining a performance bond. King, who was a man of some substance, was approached for financial assistance. He provided it. Through his efforts, and financial contributions, the bond was arranged. In return, King became a part owner of the company. He, Hawkins and G. Thomas Gurr became equal shareholders in it.

The company had a serious cash flow problem due largely to a wage-rate dispute with the Navy. Claim had been made against the company under the Bacon-Davis Act for underpayment of wages on the Norfolk job. This was a labor intensive contract and the wage claim was a serious matter with potential grave financial consequences to the company.

The company needed badly an infusion of money. King approached Gomez about providing money for the company and, in October, 1982, Gomez agreed to lend $700,-000.00 to the company.

An agreement was drafted by King, dated October 22, 1982, and was entered into

---

1. Sometimes referred to herein as Hawkins Concrete Company, or the company.

between the company by Hawkins, as president, and Gomez.

At one time the three shareholders of the company had been Hawkins, King and G. Thomas Gurr, with each of them owning one-third of the stock. Because of a requirement of the bonding company, Hawkins had been forced to divest himself of ownership of his stock. At the time the negotiations with Gomez commenced, and throughout consummation of the transaction, he owned no stock in the company. Under his agreement with the company, he remained as president of it, and had the right to receive one-third of the profits, and the right to obtain back the stock at some later date.

The October 22, 1982, agreement named Hawkins as an existing stockholder—the other two named were Gurr and King.

Under the agreement, Gomez would lend the company a total of $700,000.00. His rate of interest was 3% above prime. As part of the agreement, the profits of the company were to be divided equally between Hawkins, Gurr, King, and Gomez. In addition, Gomez was given an option to own 25% of the stock. He also had a right, if he desired, to terminate the agreement after the Norfolk and Pensacola contracts were satisfied and to receive one-half of the value of 25% of the stock.

Gomez received the company's notes for the money lent. The notes were unsecured.

The company's financial condition went from bad to worse until the company ultimately became insolvent. The notes were not paid and Gomez has received summary judgment against the company on them. According to matter at trial, execution on the judgment has been returned nulla bona. It was not contended at trial that the judgment is collectible.

The negotiations respecting the loan by Gomez were conducted, to large extent, by King. While Hawkins attended one meeting with Gomez and King, his participation in it was minimal.

There is conflict in the testimony of Gomez and King.

King testified he advised Gomez that, because of his interest in the company, he could not represent him in the loan transaction, and that he should get another lawyer. He also testified that he advised him fully and completely about the company and its financial condition.

Gomez testified that King told him it was a good investment and that he, King, was involved in it and would look after him in the transaction. According to Gomez, King did not suggest he get another lawyer, and he trusted King and relied upon him to look after him in the matter. In making the loan, he testified, he also relied on his belief that Hawkins, whom he understood was an efficient businessman, was a part owner of the company and so was also at risk.

The monies that were evidenced by the notes given for the $700,000.00 under the stipulated facts were paid to the company as follows:

Check for $100,000.00 presented for payment on October 7, 1982.

Check for $75,000.00 presented for payment on October 18, 1982.

Check for $75,000.00 presented for payment on October 26, 1982.

Check for $400,000.00 presented for payment on November 1, 1982.

Check for $50,000.00 presented for payment on December 8, 1982.

While there are other conflicts in the testimony, the plaintiff, insofar as his claim against King is concerned, relies on King's alleged failure to disclose to him the following information:

The company's liabilities at the time of the loan exceeded its assets.

Hawkins was "not an owner" of the company.

The wage claim and dispute on the Norfolk job.

The repossession of a crane and some other equipment by creditors of Hawkins Concrete Company.

The payment by Hawkins Concrete Company to various people to guarantee some of the loans it had made.

King testified he had disclosed all of these matters to Gomez. Gomez said that none were disclosed to him and that he would not have made the loans had he known these matters.

In weighing this conflict, this court finds the testimony of Gomez respecting these items to be the credible and believable testimony.

Gomez had been a successful businessman in Venezuela. In at least one other instance in this country he made a loan and required that it be secured by a mortgage. When asked about it, he testified it was natural to obtain security.

For him to have made an unsecured and sizable investment of this kind, he must have believed from his conversation with King that it was a good investment. His statement that he trusted and relied on King in connection with it, and that he believed Hawkins was a part owner, is credible and believable—nothing else justifies this unsecured loan for this much money to a company about which he knew nothing other than what King told him.

It almost strains credulity that he would make this sizable unsecured loan relying on advice from King that it was a good investment and on his belief that Hawkins was a part owner of the company. To conclude that he would have made the loan had King disclosed to him the matters Gomez said he did not know strains that credulity to the breaking point. It is incredible that he would have made this loan had he known the matters he said would have caused him not to make it.

■ Under King's version he did not serve as attorney for Gomez in the transaction. Yet King conducted the negotiations, went ahead with the transaction, prepared the agreement, and prepared the promissory notes. Thus, he used his legal ability and, while he says his legal ability was exerted in behalf of the company, it still remains he did it all knowing that Gomez had no lawyer. He must have known, and this court concludes he knew, that Gomez was relying on him in the transaction and in the preparation of these papers. The conclusion reached by this court is that he was, in fact, performing legal services as an attorney for Gomez in connection with this loan transaction.

Even if it be considered that King was not representing Gomez in a particular loan transaction, though then representing him in other matters, such would make no difference in King's responsibilities to Gomez.

■ It is not disputed he was at the time representing Gomez in other legal matters. Under the Code of Professional Responsibility, since he was representing Gomez in other matters at that time, he was in a fiduciary relationship insofar as Gomez was concerned in connection with this particular loan transaction whether or not he was representing him in it.

As the Code of Professional Responsibility contemplates, and as expert opinion received at trial points out, once King's professional obligations had attached and were in effect, the duties he owed in conflict situations would remain and be the same whether in a particular transaction he was representing not Gomez but Hawkins Concrete Construction Company.

In the situation here presented, King, as the attorney, found himself as a minimum in dual representation—of Gomez and of Hawkins Concrete Construction Company—so there was conflict of interest. Moreover, King had personal financial interest in the company and financial exposure by virtue of guarantees which he had given which were affected by the financial condition of the company.

Under the situation here presented, King could not and should not have undertaken to act as attorney in connection with the loan transaction without making full and complete disclosure of all facts known to him regarding the financial condition of the company. Particularly is this so where, in an instance of this kind, the attorney himself had a financial interest in the company

to whom the loan was to be made. It was King's professional obligation in the factual situation here involved to make full and complete disclosure to Gomez and obtain the informed consent of Gomez before acting as attorney in the transaction.

In order for non-disclosures by King to be material in this suit they must have resulted in damage to Gomez. The non-disclosures which plaintiff relies on in this suit, and which Gomez stated caused him to make the loans, are only those referred to in this decision. But the evidence concerning them establishes both breach of fiduciary duty and negligence allowing Gomez to recover from King.

■ While the Code of Professional Responsibility does not undertake to define liability of lawyers for professional conduct, it constitutes some evidence of standards required of them. *Woodruff v. Tomlin*, 616 F.2d 924, 936 (6th Cir.1980).

■ King contended before this court that, for there to be recovery on a breach of fiduciary duty, the attorney must have received property from the client. While the authorities cited on the subject deal with situations where the attorney has received property from his client, such does not mean there cannot be breach of the fiduciary relationship in other factual situations.

■ The test is whether the attorney has entered into a transaction with his client of advantage to himself. If he has done so, then the question of the fiduciary relationship comes into play and is applicable. In such a situation the attorney has the burden of showing not only that he used no undue influence but that he gave his client all the information and advice which would have been his duty to give if he himself had not been interested and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger. *Bolles v. O'Brien*, 59 So. 133, 134 (Fla.1912).

■ The loan transaction with Gomez was of advantage to King. He was substantially involved in the company and the company needed money. The loan of the money by Gomez was for the benefit of the company but it was also for the benefit of King and the others who were involved with King in the company.

Respecting the charge of negligence, King contends he could only have been guilty of negligence were he representing Gomez in the loan transaction, as a claim of negligence can only arise out of a matter entrusted to the attorney for the attorney to handle.

■ This court concludes that King was, in fact, representing Gomez in the transaction. However, beyond that it also concludes that King should be liable on the claim of negligence by Gomez. In this factual situation King owed an obligation to Gomez under the Code of Professional Responsibility. If he failed to discharge that obligation—as this court holds—then the claim of negligence against him is established. Evidence that King did not conduct himself in this situation as reasonably as an attorney should respecting the Code of Professional Responsibility is evidence of failure to use due care as an attorney. Under the factual situation here presented King did not use the degree of care required of an attorney and is liable for his negligence in not so doing.

On the question of negligence, the following statement from *Drawdy v. Sapp*, 365 So.2d 461, 462 (Fla. 1st DCA 1978) is instructive:

> We affirm. Generally in a suit against an attorney for negligence the plaintiff must prove 1. the attorney's employment, 2. his neglect of a reasonable duty, and 3. that such negligence resulted in and was the proximate cause of loss to the client.

Here King was employed by Gomez. Under that employment, and by virtue of the Code of Professional Responsibility, it became his duty to advise and counsel fully with Gomez on all aspects relating to the financial condition of the company when he was dealing with Gomez on a loan to that company, even though he was not serving

as Gomez' attorney in the particular loan transaction. Here, under the holding of this court, King neglected to perform that duty and the result of his neglect was a proximate cause of loss to the client. Under *Drawdy, supra,* that neglect is negligence and in this suit was a proximate cause of loss to the client.

The conclusion that this court reaches concerning the question of breach of fiduciary duty and of negligence is bolstered by the expert opinion testimony at trial.

In an earlier memorandum decision in this case, this court, quoting approvingly from 7 American Jurisprudence 2d, Attorneys at Law, § 122, p. 191, reached the conclusion that the rule of reliance by a client on the acts and words of his attorney within the scope of the confidential relationship is applicable only while the relationship exists and with reference to the matter involved in the relationship, and that the parties may deal at arms length with each other respecting matters outside the scope of those involved in the relationship.

Cited to the court just prior to trial was the case of *Florida Bar v. Davis,* 474 So.2d 1165 (Fla.1985). In this case there was involved a loan transaction by an attorney with his client. The attorney, while representing the client in another matter, obtained a loan from his client. Disciplinary action was brought and the attorney was found guilty of violating the Code of Professional Responsibility as adopted in Florida. Under this holding, the court concludes that the reliance it placed on the American Jurisprudence reference was misplaced, and that, as pointed out in this decision, the attorney may be held liable here for violation of the disciplinary rules in a matter in which he is not representing the client where there is at the time representation of the client in other matters.

The court recognizes that this recent Florida decision dealt with a disciplinary matter. As previously pointed out, however, while the Code of Professional Responsibility does not undertake to define civil liability of lawyers for professional misconduct, it constitutes some evidence of standards required of them. *Woodruff, supra.*

King was at substantial financial risk with the company. Under the evidence, his losses eventually were more than those of Gomez. It may be that, at least to some extent, he overlooked or ignored his professional obligations to Gomez because of the exigency of the situation confronting him and the other owners of the company.

But his failure to discharge those obligations, for whatever reason, may neither be overlooked nor ignored.

King is liable to Gomez both for breach of fiduciary duty and negligence and, consequently, for the damages proximately caused thereby. The damages to be awarded are the $700,000.00, and prejudgment interest thereon, as pointed out hereafter.

Respecting Hawkins, Gomez testified at trial that it was important to him that Hawkins be an owner of the company because he wanted him at financial risk in it.

Contention was made at the trial that, since Hawkins was still actively involved in the management of the company, and had rights respecting it, and was at some risk because of personal guarantees, this misrepresentation that he was a stockholder could not be material. However, Gomez, questioned closely respecting it, adhered to his position that, had he known Hawkins had divested himself of ownership in the company, he would not have made the loan.

To this court, his testimony is credible and believable. Under his version, he was relying on King and on his belief that Hawkins had ownership interest in the company.

Insofar as the claim against Hawkins is concerned, he is charged with fraud in the inducement. In order for the plaintiff to prevail, he must establish that Hawkins made a false statement concerning a material fact, that it was made with knowledge that it is false, and that it was made with intention to induce another—in this case, Gomez—to act on it with consequent inju-

ry. 27 FLA.JUR.2D, *Fraud and Deceit*, § 7 (1985).

■ Insofar as the charge of fraud is concerned, the fact is "material" if but for the misrepresentation the complaining party would not have entered into the transaction. *Hauben v. Harmon*, 605 F.2d 920, 924 (5th Cir.1979). This court concludes from the testimony that in this case the question whether Hawkins was in fact a shareholder was a material fact.

Under the testimony presented at trial, Hawkins was present at only one meeting prior to the conclusion of negotiations of the loan with Gomez. He played only a small part in that meeting. Gomez testified that, at that meeting, Hawkins made no representations of any kind to him.

■ Hawkins is sought to be charged with the misrepresentation contained in the agreement to the effect he was a stockholder in the company. Hawkins at trial testified that he did not know that statement was included in the agreement. Under his testimony, believable to this court, he relied on King in preparing the agreement, and he signed the agreement without reading it and without knowing what was contained in it.

For the plaintiff to recover on his claim against Hawkins, he must establish that the false statement was made by Hawkins with knowledge that it was false and with intention to induce Gomez to act upon it. Plaintiff has failed in his burden—he has not established the statement was made by Hawkins with intention to induce plaintiff to act upon it.

Hawkins testified that at the meeting, in which he was present with Gomez, King made some of the contested statements to Gomez. In this respect, Hawkins was not credible. However, that does not mean that he was not credible and believable when he said that he did not read the agreement King had prepared.

■ At trial the other misrepresentation claimed was based on the contention that the agreement with the company provided for Gomez to obtain 25% of the stock and that this was a misrepresentation because the stock was owned by shareholders and not owned by the company. The contention was that Hawkins, on behalf of the company, had made a personal misrepresentation when the agreement said the company could deliver the stock.

There was no evidence at trial that the stockholders in the company did not intend to convey the stock under the agreement. To the contrary, the testimony at trial established that the shareholders of the company understood the agreement and were prepared to comply with it so that the company could comply with the agreement. It does not appear from the evidence that this was a misrepresentation.

Judgment will be entered for Hawkins.

In this case plaintiff seeks prejudgment interest. In an earlier ruling in this case, based on authorities cited to it, the court concluded that based on Florida law prejudgment interest should not be allowed in this tort case.

Cited now to the court is the case of *Argonaut v. May*, 474 So.2d 212 (Fla.1985), [10 FLW 353].

In that case the court had before it a suit in which Argonaut Insurance Company had paid the owners of the Colony Club Apartments for damages from a fire caused by the negligence of a May Plumbing Company employee. The company then filed a subrogation action against May Plumbing Company and recovered. The trial court awarded prejudgment interest.

The opinion of the District Court of Appeal reversed, holding that the comparative negligence factor made the award of damages uncertain and thus unliquidated.

The Supreme Court had jurisdiction because it said that the *Argonaut* holding directly and expressly conflicted with the decision of another district court of appeal, *Bergen v. State*, 415 So.2d 765 (Fla. 1st DCA 1982).

Resolving the conflict, the Supreme Court in this case followed the holding in the *Bergen* case to the effect that for the

purpose of assessing prejudgment interest a claim becomes liquidated and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date.

Thus, in *Argonaut*, the Supreme Court applied the *Bergen* ruling in a tort case that was not a conversion case.

*Argonaut*, being of recent vintage, is not yet final. Plaintiff, though citing it, points out that a motion for rehearing has been filed so that the case does not yet have finality.

■ Nonetheless, study of the decision, and of the earlier cases cited in it, convinces this court that its earlier holding was in error and that, in the instant case, under Florida law prejudgment interest may be obtained.

In most tort cases the claims for damages are not fixed either in time or in amount. In this somewhat unusual case, the amount of damages is fixed at $700,-000.00, and the time is fixed with certainty because the times when the amounts of money comprising the $700,000.00 were lent to the company are fixed. The judgment of this court fixes the amount of the damages as of a prior date and so the claim for the purpose of assessing prejudgment interest is liquidated.

*Argonaut* points out, in a footnote, that prejudgment interest in Florida is not recoverable on awards for personal injury.[2]

It also points out, however, Florida, since at least before the turn of the century, has adopted the position that prejudgment interest is merely another element of pecuniary damages. After discussion, the court concluded that:

> In short, when a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss.

**2.** The court does point out that in *Zorn v. Britton*, 120 Fla. 304, 162 So. 879 (1935), a suit arising from an accident resulting in both personal injury and property damage, the court disallowed the claim for prejudgment interest.

Under the principles enunciated in this and other Florida cases, prejudgment interest, considered as an element of damages as a matter of law, should be awarded in this case. There is no uncertainty. The amount of the damages is established as of a date certain prior to the date of entry of a judgment. Computation of prejudgment interest here involves merely a mathematical calculation. As *Argonaut* points out, the legislature has established a statutory interest rate which controls prejudgment interest. Section 687.01, FLORIDA STATUTES. Under that Florida statute, as amended effective July 1, 1982, and so applicable to all times pertinent in the present case, the rate of interest is 12% per annum.

*Bergen* is a conversion case. *Argonaut* is a negligence case. The court had no difficulty applying the *Bergen* holding in *Argonaut*.

This court now concludes that, even though *Argonaut* is not yet final, in Florida the *Bergen* holding is not confined to tort conversion cases, but extends also to a negligence case such as the one before this court.

Under the stipulated facts before the court Gomez lent Hawkins Concrete Construction Company $100,000.00 on October 7, 1982; $75,000.00 on October 18, 1982; $75,000.00 on October 26, 1982; $400,-000.00 on November 1, 1982; and $50,-000.00 on December 8, 1982.

Gomez is entitled to recover damages in the principal amount of $700,000.00, together with prejudgment interest at the rate of 12% per annum on the following amounts from the following dates to the date of this judgment:

| | |
|---|---|
| Interest on $100,000.00 from October 7, 1982 | $ 35,145.21 |
| Interest on $75,000.00 from October 18, 1982 | 26,087.67 |

In so doing, the court said that, although it would normally be awarded for property damages, the jury had lumped the award in a general verdict so that it was impossible to ascertain the amount of the property damages.

| | |
|---|---|
| Interest on $75,000.00 from October 26, 1982 | 25,890.41 |
| Interest on $400,000.00 from November 1, 1982 | 137,293.15 |
| Interest on $50,000.00 from December 8, 1982 | 16,553.42 |
| TOTAL | $240,969.86 |

Under current federal law, the rate of interest applicable to and accruing on this judgment is 7.91% per annum.

Judgment will be entered in accordance with the foregoing.